STATE *ex rel.* GULF LIFE INSURANCE COMPANY and THE FLORIDA NATIONAL BANK OF JACKSONVILLE v. CITY OF JACKSONVILLE BEACH.

194 So. 789

Division A

Opinion Filed March 19, 1940

*Giles J. Patterson,* for Appellant;

*William A. Stanly,* for Appellee.

TERRELL, C. J.—Writ of error herein is to a final decree granting a motion to quash and to dismiss an alternative writ of mandamus directed to the City of Jacksonville Beach commanding it to levy taxes sufficient to pay designated past due coupons on certain of its outstanding bonds.

It is admitted that the bonds were legally issued and are

outstanding, that the coupons are legal, outstanding and past due, and that relators are the holders thereof for value and in due course, but as ground for refusing to pay the City tenders the defense that it is limited by a tax levy of twenty mills for all purposes, that when demand was made on it to pay the coupons, it had levied the full twenty mills permitted by law and that the funds derived therefrom were not sufficient to enable it to pay the coupons sued on. The defense of estoppel was also interposed but it is not pressed here and we are not impressed with its substance.

The question for determination is whether or not at the time the bonds and coupons were issued, the City of Jacksonville Beach was limited by the provisions of its charter to a maximum tax levy of twenty mills for all purposes.

Two issues of bonds are involved in this proceeding. The first issue was dated October 1, 1914, some of which were designated as "sewer bonds" and the others as "electric light bonds." The second issue was dated July 1, 1925. Both issues pledged the full faith and credit of the City of Jacksonville Beach for the payment of principal and interest thereon.

The answer to the controlling question turns on what the law of the City was on the dates the bonds were issued. The City bottoms its contention on the provisions of Section 27 of Chapter 5830, Acts of 1907, better known as its city charter, which unquestionably limits the total tax levied upon any property in any one year to 1 per cent, which was later increased to 2 per cent.

As against the contention of the City, the relator contends that the first issue of bonds and coupons is controlled by Chapter 6382, Acts of 1911, and that the second issue is controlled by Chapter 10721, Acts of 1925. Both of these Acts are amendments to the city charter, Chapter 5830,

Acts of 1907, relied on by the City so in reality, the question we are called on to answer is one of construing the effect of the Acts of 1911 and 1925 on the Act of 1907.

If Chapter 5830, Acts of 1907, was the only Act involved, all question as to the truth of the City's contention would· be removed. Chapter 6382, Acts of 1911, materially extended the powers of the City of Jacksonville Beach (known as Pablo Beach at that time), Section 2 being as follows:

"The Town of Pablo Beach shall have the power to borrow money and issue bonds to the extent and in the manner that cities and towns which are incorporated under the general law of Florida, may borrow money or issue bonds for the purpose of building or repairing the public works of the town, the widening, opening, grading and paving, bulkheading and extension of streets or parks, sewerage and drainage, payment of existing indebtedness of the Town of Pablo Beach, or any other municipal purpose."

Chapter 10721, Acts of 1925, also authorized the City of Jacksonville Beach to issue bonds and validated all proceedings in connection with the second issue of bonds and coupons involved in this litigation, Section 3 of said Act being as follows:

"All Acts and proceedings heretofore taken' to authorize the issuance and sale of bonds by the City of Jacksonville Beach are hereby legalized, ratified and declared valid to all intents and purposes; and all such bonds delivered either before or after the passage of this Act, pursuant to such proceedings, are hereby legalized and declared to be the legal and valid obligations of said City."

The general law in effect at the time the Act of 1911 was embraced in Sections 1061 and 1065 of the General Statutes

of 1906, which authorized the town council to issue bonds for designated public purposes and to impose a tax on all the taxable property of the town to pay principal and interest on said bonds. No limitation is placed on the amount of taxes that may be levied for this purpose and neither of the Acts brought in question contain any such limitation.

This Court is committed to the doctrine that any tax limitation written into the Act under which bonds are issued becomes a part of the bond contract as much as if the Act was written into the bond. We also approve the well settled doctrine that a legislative power to issue bonds implies the power to impose taxes sufficient to pay the principal and interest on them as they mature.

The City Charter as originally comprehended in Chapter 5830, Acts of 1907, as amended, contained a definite limitation of a 2 per cent tax levy for all purposes but Chapter 6382, Acts of 1911, was a clear extension of the City's power to issue bonds in the manner provided by general law which carried a tax sufficient to pay interest and principal on the bonds as they mature. Chapter 10721, Acts of 1925, further extended the power of the City in the same respect and validated every act and proceeding done in connection with the second bond issue including the tax levy. A casual reading of the three Acts leaves no doubt of this purpose on the part of the Legislature.

Having reached this conclusion, it follows that the judgment below must be and is hereby reversed.

Reversed.

Buford and Thomas, J. J., concur.

Whitfield, J., concurs in opinion and judgment.

Justices Brown and Chapman not participating as authorized by Section 4687, Compiled General Laws of 1927, and Rule 21-A of the Rules of this Court.